UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHNNY F. WILLIAMS,

                        Plaintiff,

                  -vs-                                  13-CV-1101-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

_____

APPEARANCES:    BERNHARDI & LUKASIK PLLC (SARAH A. FREDERICK, ESQ.) Amherst, New York, for Plaintiff.

                        WILLIAM J. HOCHUL, JR., United States Attorney (JASON PARKERSON PECK, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated December 15, 2014 (Item 10).

Plaintiff Johnny Williams initiated this action on November 7, 2013 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 6, 8).

For the following reasons, plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

## **BACKGROUND**

Plaintiff was born on May 11, 1959 (Tr. 326, 379).[1]   He protectively filed an application for SSI and DIB on December 29, 2008, alleging disability due to psychiatric problems, back pain, and bronchitis, with an onset date of July 1, 2007 (Tr. 326).  The claims were denied initially on April 30, 2009 (Tr. 98), and again upon reconsideration on January 15, 2010 (Tr.102-110).  Plaintiff then requested a hearing, which was held on March 28, 2012, before Administrative Law Judge ("ALJ") David S. Lewandowski (Tr. 43-88).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  A vocational expert ("VE") also appeared and testified.

On May 18, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 27-36).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (lumbar spine dysfunction, chronic obstructive pulmonary disease or "COPD," schizophrenia, and mood disorder), while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 30-31).  The ALJ discussed the evidence in the record, including medical records, diagnostic testing, reports from consultative medical sources, and plaintiff's hearing testimony, and determined that plaintiff was

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner in this action.

incapable of performing any past relevant work (Tr. 34) and has the residual functional capacity ("RFC") to perform light work with a sit-stand option (Tr. 31). Additionally, the ALJ found that plaintiff should avoid pulmonary irritants and can perform simple tasks with superficial contact with co-workers, no contact with the public, and limited interaction with supervisors. *Id.* Relying on the VE's testimony, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy and thus has not been disabled within the meaning of the Act from the onset date to the date of the decision (Tr. 36).

The ALJ's decision became the final decision of the Commissioner on September 12, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-5), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ erred at step three of the sequential evaluation process in finding that plaintiff's schizophrenia did not meet the criteria of Listing 12.03; (2) the ALJ erred in his consideration of the opinion of plaintiff's treating psychiatrist; (3) the VE's testimony was inconsistent with ALJ's RFC determination; and (4) the ALJ improperly disregarded the testimony of plaintiff's fiancee. *See* Items 6-1, 9. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 8.

**DISCUSSION**

**I.     Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."   42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000);

*Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d

at 773).  "Failure to apply the correct legal standard constitutes reversible error, including,

in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*,

546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's

determination cannot be upheld when it is based on an erroneous view of the law, or

misapplication of the regulations, that disregards highly probative evidence.  *See Grey v.*

*Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."),

*quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial

evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive, and where a claim has been denied ... the court shall review only the

question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the

Commissioner's decision rests on adequate findings supported by evidence having rational

probative force, [the court] will not substitute [its] judgment for that of the Commissioner."

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial

evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*,

2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d

1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was

substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.   Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI and DIB under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."   42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.   *See* 20 C.F.R.§§ 404.1520, 416.920.   First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide

if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1521(a), 416.921(a); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the

claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since July 1, 2007, the alleged onset date (Tr. 29). At steps two and three, as indicated above, the ALJ found that plaintiff's impairments, while severe, did not meet or equal the severity of any of the impairments in the Listings (Tr. 30-31).

At step four, the ALJ discussed the medical evidence of record, including plaintiff's history of schizophrenia and mood disorder. The ALJ afforded significant weight to the opinion of consultative psychologist Thomas Ryan, Ph.D. (Tr.33). Dr. Ryan found that plaintiff demonstrated no significant limitations in his ability to follow and understand simple directions and could perform simple tasks, generally maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform some complex tasks independently (Tr. 722). Dr. Ryan found plaintiff's decision-making impaired, as well as

his ability to relate adequately with others and deal with stress. *Id.*

Based on his review of the evidence, the ALJ found that plaintiff had the RFC to perform light work with a sit-stand option every 20 minutes (Tr. 31). Additionally, the ALJ noted the following non-exertional limitations: plaintiff can perform simple tasks and occasionally make simple decisions, can work in small familiar groups involving superficial interaction with co-workers and no interaction with the public, and plaintiff's interactions with supervisors should be limited to a couple of minutes at any one time. *Id.* The ALJ found that plaintiff could not perform his past relevant work as a welder but, relying on the testimony of the VE, found that plaintiff could perform the jobs of mail clerk, assembler, and marking clerk (Tr. 35).

## IV.   Plaintiff's Motion

### A.  Treating Physician Opinion

Plaintiff argues that the ALJ erred in his consideration of the opinion of treating psychiatrist Dr. Christine Lim. Under the so-called treating physician rule, the ALJ is required to give the medical opinion of plaintiff's treating physician "controlling weight" as to whether or not plaintiff's impairments prevent him from being able to engage in substantial gainful activity, if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted) (alteration in original). The Commissioner argues that Dr. Lim was not a treating physician because she examined plaintiff only twice. *See* Item 8, p. 23.

Here, plaintiff's treating psychiatrist Dr. Christine Lim completed an employability

assessment form on November 18, 2009 (Tr. 412-13), following an examination (Tr. 686-690).  She opined that plaintiff was "very limited" in his ability to make simple decisions, interact appropriately with others, maintain socially appropriate behavior, and function in a work setting at a consistent pace (Tr. 411)  Dr. Lim further stated that plaintiff is "unable to work with others due to extreme paranoia and history of hostility when feeling threatened" (Tr. 413). He was also "unable to tolerate noisy areas." *Id.*

There is no mention of Dr. Lim's opinion in the ALJ's decision and no indication of the weight given to her opinion. In fact, the ALJ relied on the report of consultative examiner Dr. Ryan, "in the absence of other examining or treating source opinions" (Tr. 33).  Although there is support for the Commissioner's argument that Dr. Lim should not be considered a treating physician because of her brief treating relationship, *see Mongeur v. Heckler,* 722 F.2d 1033, 1039, n. 2 (2d Cir. 1983), Dr. Lim completed her assessment after an examination of the plaintiff.  She is one of several providers who treated plaintiff at the Veterans Administration Medical Center ("VA") and clearly has a treating relationship with the plaintiff, albeit brief at the time of the functional assessment. Dr. Lim submitted a medical opinion that should have been evaluated by the ALJ, whether she was considered a treating source or not.  *See* 20 C.F.R. §§ 404.527(b),(c), 416.927(b),(c); *Speilberg v. Barnhart,* 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005) (ALJ should consider "all medical opinions received regarding the claimant.").

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). Likewise,

this analysis must be conducted to determine what weight to afford any medical opinion because the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the regulations provide that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2),  416.927(c)(2).  Indeed, when an ALJ does not credit the findings of a treating physician, the claimant is entitled to an explanation of that decision. *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999).

In this case, the ALJ failed to consider the evaluation of plaintiff by Dr. Lim, either as the opinion of a treating physician or another medical source, and the court is left to speculate whether the ALJ rejected the opinion or simply did not realize it existed in this voluminous record.   The brief treating relationship is just one factor that should be considered in assigning the weight to be given Dr. Lim's opinion and it is significant that the ALJ gave great weight to the opinion of the consultative source, who saw the plaintiff on just one occasion.  In any event, the ALJ's failure to evaluate the medical source opinion of Dr. Lim requires remand so that the ALJ may properly consider the opinion of Dr. Lim, specify the weight her opinion is given, and give his reasons for the determination.

**B.  Listing 12.03**

Plaintiff further contends that ALJ Lewandowski erred in his determination that plaintiff's mental impairments did not satisfy the criteria in the Listings.   The ALJ determined at step two that plaintiff's mental impairment is "severe" as that term is defined in the regulations because it "imposes more than minimal functional limitations" (Tr. 29). At step three, the ALJ discussed the medical evidence of record regarding plaintiff's physical and mental impairments, with particular focus on the criteria of Listings 12.03 and 12.04. To satisfy these criteria, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration....

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(B), 12.04(B) (Paragraph "B" criteria). A claimant can also satisfy the criteria of the Listings by presenting a medically documented history of chronic schizophrenic, paranoia, or other psychotic disorder (§12.03) or affective disorder (§ 12.04) of at least two years' duration, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration;
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate;
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(C), 12.04(C) (Paragraph "C" criteria).

ALJ Lewandowski determined that the severity of plaintiff's mental impairments did not meet or equal the criteria of Paragraphs B or C.  Relying primarily on the report of consultative examiner Dr. Ryan (Tr. 720–23), the ALJ found that plaintiff experiences mild restriction in the activities of daily living; moderate restriction in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; no episodes of decompensation which have been of extended duration; and no evidence to satisfy the remaining Paragraph C criteria (Tr. 30–31).

The court has reviewed the medical record with specific regard to plaintiff's mental impairments.  The report of consultative examiner Dr. Ryan largely supports the ALJ's determination that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings.  However, as previously stated, the ALJ failed to properly evaluate treating physician records from the VA.  Those records indicate plaintiff's treatment for mental impairments and his history of paranoia, hostility, and suicidal ideation (Tr. 687, 938, 1076, 1155).  At the time of the consultative examination, on December 15, 2009, Dr. Ryan found that plaintiff was able to dress, bathe, groom himself, cook, and perform some household chores, and his concentration and memory were found to be intact (Tr. 722).  VA records indicate, however, that plaintiff avoids contact with others, fears that people are hiding in his home, and feels that he is being watched (Tr. 687).  It is not apparent from the ALJ's decision if he considered the records of Dr. Lim and other treating providers at the VA at step three of the sequential analysis.  As the court has found remand to be appropriate for other reasons, the ALJ should review the step three analysis to determine if plaintiff's mental impairments satisfy the criteria of the Listings, taking into account the medical opinion of

the treating providers at the VA.

### C.  VE Testimony

Plaintiff further argues that the ALJ erred in his determination that, while plaintiff could not perform his past relevant work as a welder, he could perform jobs that exist in significant numbers in the national economy.   In the RFC determination, the ALJ acknowledged plaintiff's use of a cane to ambulate and specified a sit/stand option every 20 minutes (Tr. 31).  Plaintiff argues that his use of a cane while standing precludes the use of one hand for approximately half of the workday and is inconsistent with the DOT descriptions of the jobs cited by the VE - marking clerk/addresser, mail clerk, and small parts assembler - all of which require the frequent use of both hands.

Where a claimant's impairments are such that he cannot perform his past work, the burden shifts to the Commissioner to prove that there are other jobs that the claimant is capable of performing. *Rosa v. Callahan*, 168 F.3d at 77. The Commissioner is required to "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy," taking account of the claimant's age, education and training. *Id.* at 77–78. The Commissioner can meet this burden by resorting to the applicable medical vocational guidelines, but when the guidelines fail to encompass the extent of claimant's physical limitations, the Commissioner must seek the testimony of a vocational expert, or other similar evidence, that there are jobs in the national economy that the claimant is able to obtain and perform.  *Id.* at 78. The VE can rely on information contained in government and other publications, including the DOT. *See* 20 C.F.R. § 404.1566(d). However, the ALJ has the responsibility to determine the claimant's

capabilities based on all of the evidence. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

Having reviewed the VE testimony, the court is convinced that the VE specifically considered both plaintiff's use of a cane and the sit/stand option in the representative occupations.  The record indicates that plaintiff's use of a cane to ambulate would not preclude his use of both hands while standing in place.  Plaintiff testified that he used the cane "from time to time," to "walk to the store," or if he is "standing a whole lot in the house" (Tr. 59).  Upon  her examination, consultative physician Dr. Kathleen Kelley found that plaintiff's gait was normal, he used no assistive devices, rose from his chair without difficulty, and needed no assistance getting on or off the examination table (Tr. 726). Accordingly, the court finds that the ALJ did not err in finding that plaintiff could perform occupations that required the use of his hands, even with the option to sit and/or stand every 20 minutes.

Additionally, the VE considered the RFC requirement that plaintiff have limited contact with supervisors.  The VE testified that limited contact with supervisors would decrease the number of available jobs, but not substantially (Tr. 80-81).  Accordingly, the ALJ properly determined that plaintiff was capable of making an adjustment to other work that exists in significant numbers in the national economy.

### D.  Testimony of Plaintiff's Fiancee

Finally, plaintiff asserts that the ALJ erroneously failed to consider the testimony of his fiancee, Kelly Bolden.  Although not entirely cumulative, this lay witness evidence basically reiterated plaintiff's own testimony that he suffered from paranoia, constantly checking to make sure the doors of his home were locked and the curtains closed (Tr. 72-

76).  The ALJ did not mention this lay evidence in his decision.

Social Security Ruling 06–03p instructs that, in considering evidence from non-medical sources such as spouses, parents, and friends, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–03p, 2006 WL 2329939, at *6.  In this case, the ALJ did not consider the lay witness evidence in his decision at all.

The Second Circuit has held that, where the evidence of record permits the court to glean the rationale of an ALJ's decision, the ALJ is 'not required to have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (quotations omitted); *see also Mongeur v. Heckler*, 722 F.2d at 1040); *Halloran v. Barnhart*, 362 F.3d at 32.  In this case, however, the ALJ should have, at the very least, mentioned the evidence in the context of assessing plaintiff's credibility, given the fact that Ms. Bolden corroborated plaintiff's allegations of functional limitation.  *See Bell v. Astrue,* 2013 WL 1352354, *9 (D.Vt. Mar. 6, 2013), *Report and Recommendation adopted*, 2013 WL 1352380 (D.Vt. Apr. 3, 2013) (citing *Johnson v. Astrue*, 2008 WL 2705172, at *2 (C.D.Cal. July 7, 2008) (ALJ's failure to mention potentially corroborative lay witness testimony not harmless because "[c]rediting that testimony might have caused the ALJ to reach a different decision regarding Plaintiff's credibility, and ultimately, Plaintiff's disability")).  As the court has previously determined that remand is required on other grounds, the ALJ should, upon remand, explicitly consider

the lay evidence offered by the plaintiff and, if he decides to reject it, state the reasons for the rejection.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 6) is granted, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  Defendant's motion for judgment on the pleadings (Item 8) is denied. The Clerk of the Court is directed to close this case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:    May 13, 2015